**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**JULIA E. JARRETT**
Julia.Jarrett@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
1000 SW Third Ave., Suite 600
Portland, Oregon  97204-2902
Telephone:    503-727-1000
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>**$10,664.24 IN UNITED STATES CURRENCY;**<br>**$5,862.50 IN UNITED STATES CURRENCY; AND**<br>**$315.79 IN UNITED STATES CURRENCY,** *in rem*,<br><br>        Defendants. | Case No.  3:20-cv-01522-BR<br><br>**COMPLAINT *IN REM* FOR FORFEITURE** |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Julia E. Jarrett, Assistant United States Attorney, for its Complaint *in rem* for forfeiture, alleges:

**Complaint in rem for Forfeiture**                                                                                   Page 1

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 18 U.S.C. § 981; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendants, *in rem*, further described as:

a. $10,664.24 seized from U.S. Bank account ending in 9761 in the name of Omar Morales;

b. $5,862.50 seized from Umpqua Bank account ending in 6642 in the name of Omar Morales; and

c. $315.79 seized from Oregon State Credit Union account ending in 0369 in the name of Omar Morales,

collectively referred to as "Subject Bank Accounts," were seized in the District of Oregon, and are now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendants, *in rem*, Subject Bank Accounts, constitute, or are derived from, proceeds traceable to violations of 18 U.S.C. § 1343 and is property involved in a violation of 18 U.S.C. § 1956 or traceable to such property. As such, the Subject Bank Accounts are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) and subject to seizure pursuant to 18 U.S.C. § 981(b), as more particularly set forth in the Declaration of Special Agent Timothy Suttles, Federal Bureau of Investigation, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, Plaintiff, United States of America, prays that due process issue to enforce the forfeiture of Defendants, *in rem*, Subject Bank Accounts; that due notice be given to all interested persons to appear and show cause why forfeiture of these Defendants, *in rem*, should

not be decreed; that due proceedings be had thereon; that these Defendants be forfeited to the United States; that the Plaintiff United States of America be awarded its costs and disbursements incurred in this.

Dated: September 3, 2020.    Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*/s/ Julia E. Jarrett*
JULIA E. JARRETT
Assistant United States Attorney

## VERIFICATION

I, TIMOTHY SUTTLES declare, under penalty of perjury, pursuant to the provisions of 28 U.S.C. § 1746, that I am a Special Agent with the Federal Bureau of Investigation and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

*/s/ Timothy Suttles*
TIMOTHY W. SUTTLES
Special Agent
Federal Bureau of Investigation

DECLARATION OF SPECIAL AGENT TIMOTHY W. SUTTLES

I, Timothy W. Suttles, do hereby declare:

**Introduction and Agent Background**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since January 2001. I am assigned to the Eugene, Oregon Resident Agency of the FBI. My responsibilities include the investigation of federal criminal offenses, to include Title 18, United States Code, Section 1343, Wire Fraud and Title 18, United States Code, Section 1956, Money Laundering.

2. I submit this declaration in support of a Complaint *in rem* for forfeiture of the following assets:

   a. $10,664.24 seized from U.S. Bank account ending in 9761 in the name of Omar Morales;

   b. $5,862.50 seized from Umpqua Bank account ending in 6642 in the name of Omar Morales; and

   c. $315.79 seized from Oregon State Credit Union account ending in 0369 in the name of Omar Morales, collectively referred to as "**Subject Bank Accounts**."

3. In this declaration, I will demonstrate, based on the evidence I have reviewed, that there is probable cause to believe, and I do believe, the **Subject Bank Accounts** are property constituting or derived from proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 1343 and is property involved in a violation of 18 U.S.C. § 1956 or traceable to such

**Declaration of Special Agent Timothy Suttles**          EXHIBIT A   PAGE 1
                                                         Complaint *In Rem*
                                                         **FOR FORFEITURE**

property. As such, the property is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) and, therefore, is subject to seizure pursuant to 18 U.S.C. § 981(b).

4.   The facts in this declaration come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This declaration is for the limited purpose of establishing probable cause for the Complaint. Therefore, I have not set forth each fact I have learned during this investigation, but only those facts and circumstances necessary to establish probable cause.

## Applicable Law

5.   Title 18 United States Code, Section 1343, Wire Fraud, provides, in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

6.   Title 18, United States Code, Sections 1956, provides, in part, that whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the unlawful activity, or knowing that the transaction is designed to conceal the nature, location, source,

ownership, or control of the proceeds, shall be sentenced to a fine of not more than $500,000 or imprisoned for not more than twenty years, or both.

## Statement of Probable Cause

7. Based on information and documents received from financial institutions, in December 2019, I began an investigation regarding the rapid movement of funds into and out of numerous financial accounts belonging to Omar Morales, a United States Probation Officer employed at the United States Probation Office located at 530 Center Street NE, Suite 406, Salem, Oregon. Between January 2019 and February 2020, Morales opened numerous bank accounts, including at Columbia Bank, Oregon State Credit Union, Chase Bank, U.S. Bank, Umpqua Bank and Wells Fargo Bank. Each of these bank accounts showed laundering and funnel activity.

8. As a result, at least one of the banks closed Morales's bank account due to suspicious activity. Even then, Morales moved his funds to newly opened accounts and continued the suspicious activity. Funds were transferred into the accounts using various methods, including wire transfers, peer-to-peer transfers, cash transactions, and cryptocurrency transactions, which travelled in interstate or foreign commerce. Nearly all funds transferred into his accounts were withdrawn within days and in cash.

### Victims Scammed and Sending Money

9. Based on my training and experience, I am aware that there are numerous online fraud schemes targeting individuals and businesses. These schemes often include the promise of substantial payments after the victim pays a nominal amount upfront. Common schemes include

**Declaration of Special Agent Timothy Suttles**              **EXHIBIT A    PAGE 3**
                                                              **Complaint *In Rem***
                                                              **FOR FORFEITURE**

the payout from a large lottery winning after payment of required taxes and fees, or the promise of a lucrative government grant after payment of required processing fees. In reality, the victim is coerced into continually paying additional "fees" in order to receive a promised large payout that is never made. Online schemes typically involve wire transfer payments to the perpetrators' bank accounts or the bank accounts of individuals working with the perpetrators, and the rapid withdrawal of the victim funds in order to prevent the victim from recalling the funds after realizing they have been the victim of fraud.

10. These scams often depend on individuals known as "money mules" to succeed. Money mules set up financial accounts that mask the true identity of the scammer, funneling victims' funds to the scammer. While some money mules are unknowing and unwitting participants in the scheme, and often victims themselves, others possess varying degrees of knowledge regarding the scam, and benefit from the scam by skimming a portion of the fraudulent funds before sending the funds to the scammer.

11. I interviewed four individuals who sent money to Morales. All of the individuals confirmed they were victims of various fraud schemes. None of the individuals believed they talked to or met Morales. These individuals were initially contacted via email or Facebook Messenger by an unknown individual or individuals. The conversations then transitioned to text messages. They were promised a large sum of money and told to pay a fee or tax in order to receive the promised sum.

12. For example, one victim, AV1, who lived in California, thought she was applying for and receiving a government grant. Throughout the process, AV1 was told she had to pay for

**Declaration of Special Agent Timothy Suttles**          **EXHIBIT A    PAGE 4**
                                                          **Complaint** *In Rem*
                                                          **FOR FORFEITURE**

certain things like taxes and administrative fees. She never received a grant, and sent approximately $20,000 to various people, including Morales, in an attempt to obtain a fictitious government grant. She was provided Morales's name, bank account number, specifically Morales's Bank of America account ending in 6429, routing number, and the address for his apartment on Big Oak Place in Corvallis, Oregon. On September 17, 2019, AV1 sent Morales $6,500 dollars via wire transfer. AV1 never received any grant money. Shortly after the wire, Morales withdrew nearly all of those funds in cash.

13. The other three victims I interviewed reported similar experiences. They were told they need to pay certain expenses to receive money in return. An individual, AV2, was provided Morales's bank account number ending in 6429 at Bank of America and wired him $1,750 on August 7, 2019. He then sent a check for $7,000 to Morales.

14. AV3 was provided Morales's account number for an account Morales set up at Wells Fargo and wired $5,000 to that account.

15. AV4 mailed a cashier's check to Morales at his Big Oak Place address, which was deposited into Morales's Bank of America account ending in 6429.

16. Morales was one of several people to whom these victims sent money. None of these victims received anything in return. After each of the above deposits, Morales quickly withdrew nearly all the funds in cash. Investigators have identified more than thirty additional suspected victims by reviewing Morales's bank account records and other reports. Each individual sent money to Morales, with Morales quickly withdrawing the funds in cash.

**Declaration of Special Agent Timothy Suttles**     **EXHIBIT A    PAGE 5**
                                                     **Complaint *In Rem***
                                                     **FOR FORFEITURE**

17. While some victims sent money to Morales's bank account using a direct wire, which required Morales's bank account number, or via a cashier's check, which required a name and address, others used PayPal or Venmo. PayPal and Venmo are digital wallets that are directly linked to a user's bank account or, in the case of PayPal, a credit card. The users can make payments or accept cash from other users. To transfer money via PayPal, a user must have the recipient's email address or PayPal user name. Although PayPal has a web-based platform, Venmo users can only send or request payments using a cell phone application. To transfer money via Venmo, you must have the recipient's cell phone or user name. Based on a review of PayPal and bank records, it appears victims were provided Morales's PayPal or Venmo account information and then transferred money to his account. Morales would use PayPal or Venmo to transfer the money to an associated bank account and then withdraw the money in cash much as he did for direct wires.    .

**Bank Account Analysis**

18. Morales used multiple bank accounts during this scheme. One such account was a checking account ending in 0369 at Oregon State Credit Union (OSCU). As part of the investigation, I obtained Morales's OSCU records. The checking account was opened on or before May 28, 2019. Except for an initial transfer from his existing savings account, the majority of the money going into the OSCU account was via wires, checks, or PayPal/Venmo deposits. After the deposits were made, Morales would, typically within a day or two, withdraw the amount of the deposit in cash. Between May 28, 2019 and August 31, 2019, Morales received $54,868.55 into his account at OSCU. During this same period, Morales withdrew

**Declaration of Special Agent Timothy Suttles**               EXHIBIT A    PAGE 6
                                                              Complaint *In Rem*
                                                              **FOR FORFEITURE**

$51,270 in cash from that account, often shortly after the money was deposited. Because the funds were withdrawn in cash, it is not possible at this point to determine what Morales did with the money. This account remains open.

19. An examination of the deposits and withdrawals in the OSCU account shows the following sample of this activity:

- July 15, 2019, PayPal deposit: $1,300.
  - July 17, 2019: $1,300 cash withdrawn.
- On July 27, 2019: PayPal deposit: $1,000.
  - July 27, 2019: $1,000 cash withdrawn.
- September 12, 2019: Venmo deposit: $2,640.
  - September 12, 2019: $2,630 cash withdrawn.
- November 15, 2019: Cashier's Check: $14,518.30.
  - Between November 19, 2019 and November 29, 2019, $13,900 cash withdrawn in amounts less than $10,000.

20. I have also reviewed bank account records for the period from May 2019 to February 2020 related to accounts belonging to Morales and held at Wells Fargo Bank, Bank of America, PayPal, Columbia Bank, Security Service Federal Credit Union, Umpqua Bank, U.S. Bank and Wal-Mart MoneyGram. There were deposits, totaling approximately $321,566, that were similar in nature – wire, check, or Venmo/PayPal deposits followed by immediate cash withdrawals – at all financial institutions.

21. For example, Bank of America records for account 6429, which was opened on July 2, 2019, show twenty-three wire transfer deposits between July 23, 2019 and November 7, 2019, totaling approximately $115,666, and four check deposits totaling $21,300, from various individuals located inside and outside the United States. Following the deposits, Morales withdrew the funds, totaling approximately $117,910, in cash, often only days after each deposit. The Bank of America account was closed by the bank on November 8, 2019.

22. Morales opened a bank account ending in 6083 at Columbia Bank on November 14, 2019. Morales received deposits from wires, checks, and Venmo/PayPal, consistent with the fraudulent scheme, totaling $20,990. He subsequently withdrew $20,950 in cash.

23. The Bank of America, Columbia Bank, Umpqua Bank, U.S. Bank and OSCU accounts appear to have been opened solely for the purpose of depositing and withdrawing fraud proceeds. Morales has an additional account, at Security Service Federal Credit Union, which appears to be his primary checking account. This account receives his paycheck and pays out what appears to be the majority of his bills. The investigation determined that approximately $37,000 in fraud proceeds have been deposited into this account.

24. The investigation to date has determined that Morales has withdrawn over $256,751.60 of suspected fraud proceeds in cash from the **Subject Bank Accounts**.

25. In addition to the cash withdrawals, records indicate that Morales has used fraud proceeds for his personal benefit. Between May 2019 and February 2020, Morales made suspected personal purchases totaling over $4,000 at fast food establishments, grocery stores,

dentist offices, gas stations, and paid his rent. All purchases were withdrawn from the **Subject Bank Accounts** that were funded by victims' deposits.

26.     In addition to the cash withdrawals and his personal expenditures, the OSCU account showed purchases of bitcoin (cryptocurrency) through an account at Coinbase. Coinbase operates like a cryptocurrency bank account, allowing users to buy, send, and receive cryptocurrency, as well as convert it to cash. Morales opened an account at Coinbase on March 22, 2019, using this own name, date of birth, and social security number and his Big Oak Place address. In order to open an account, you need to provide personal identifying information including a picture to verify transactions. Account holders have what is known as a wallet and typically have a key that is stored separately that is used to access the wallet. Transactions are sometimes verified by KYC (Know Your Customer) protocols, usually in the form of a "selfie." The person conducting the transactions is required to take a picture of himself (selfie) in order to complete the transaction. Records from Coinbase included a photo of Morales from one of these transactions, as well as a copy of his Oregon driver's license.

27.     Between June 11, 2019 and January 4, 2020, Morales received approximately 32.47 bitcoin, estimated to be worth over $300,000 in U.S. currency. In addition, Morales purchased 2.63874145 bitcoin using the funds from the **Subject Bank Accounts** that are traceable to the fraud. The bitcoin account operated in a similar manner to the cash flow in the **Subject Bank Accounts** —bitcoin came into the account and then was transferred out shortly thereafter. Morales would also combine received bitcoin with bitcoin he purchased, and then send it to an unknown recipient. This is consistent with the fraud scheme, but because of the

nature of bitcoin wallets, the senders and recipients of the bitcoin have not been verified. The investigation has determined that 35.10827963 Bitcoin are traceable to the fraud scheme described herein.

**Search Warrant and Morales Interview**

28. As a result of this investigation, on February 4, 2020, I submitted an affidavit supporting an application to search Omar Morales's residence, his office in Salem, Oregon, and his person as well as a warrant to seize funds from certain accounts, including his OSCU account that represented the proceeds of fraud and property involved in money laundering. I successfully seized $315.79 from Morales's OSCU account.

29. On February 5, 2020, during the execution of the search warrant at his office at the U.S. Probation office in Salem, Oregon, I interviewed Omar Morales. In summary, he stated that in October or November 2018, he went on a dating website and met an individual identified as Amy Gaines. He began communicating with Gaines on a daily basis and fell in love with her. She told him that she had a job in Dubai and that living in Dubai was expensive. She asked for help financially, and Morales began sending her his own funds.

30. Over the previous year, Gaines asked him to open bank accounts and buy bitcoin to help her with her graphic design business. Once he opened the accounts, she told him that deposits would be made into his accounts from her business. After the deposits were made, she told him to withdraw the funds and buy bitcoin at bitcoin ATMs. After purchasing the bitcoin, he sent it to the bitcoin address Gaines provided.

**Declaration of Special Agent Timothy Suttles**   EXHIBIT A   PAGE 10
Complaint *In Rem*
FOR FORFEITURE

31. Morales told me that he had recently opened a bank account at Umpqua Bank. He had recently received deposits in the account from individuals just as he received in his other bank accounts. Morales estimated the amount of money in the bank account to be approximately $10,000. Morales told me his bank account at U.S. Bank also recently received deposits just like his other bank accounts. U.S. Bank notified him that they froze his account until they can verify the deposited funds are legitimate and not the proceeds of fraud. Morales told me the money in both accounts, Umpqua Bank and U.S. Bank, was not his money.

32. On February 7, 2020, I obtained a seizure warrant for funds contained in Morales's U.S. Bank and Umpqua Bank accounts. I successfully seized $5,862.50 from Morales's Umpqua Bank account and $10,664.24 from his U.S. Bank account.

33. I interviewed Morales on two separate occasions. During both interviews, Morales told me the money in Umpqua Bank and U.S. Bank did not belong to him but to clients of his girlfriend, Amy Gaines. Morales told me the money in the Oregon State Credit Union is a comingled money of his and money from clients of Gaines.

## Conclusion

34. Based on the foregoing, I have probable cause to believe, and I do believe, that the funds seized from the **Subject Bank Accounts** are property constituting or derived from proceeds obtained directly or indirectly as a result of violations of 18 U.S.C. § 1343 and are property involved in a violation of 18 U.S.C. § 1956 or traceable to such property. As such, the property is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C) and, therefore, is subject to seizure pursuant to 18 U.S.C. § 981(b).

35.   I have presented this declaration to Assistant United States Attorney Julia Jarrett who has advised me that in her opinion, the proposed complaint is supported by probable cause.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 3rd day of September 2020.

*/s/ Timothy W. Suttles*
TIMOTHY W. SUTTLES
Special Agent
Federal Bureau of Investigation

**Declaration of Special Agent Timothy Suttles**       **EXHIBIT A    PAGE 12**
                                                        **Complaint** *In Rem*
                                                        **FOR FORFEITURE**

✎JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ❐ 1  U.S. Government Plaintiff
- ❐ 2  U.S. Government Defendant
- ❐ 3  Federal Question (U.S. Government Not a Party)
- ❐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❐ 1 | ❐ 1 | Incorporated *or* Principal Place of Business In This State | ❐ 4 | ❐ 4 |
| Citizen of Another State | ❐ 2 | ❐ 2 | Incorporated *and* Principal Place of Business In Another State | ❐ 5 | ❐ 5 |
| Citizen or Subject of a Foreign Country | ❐ 3 | ❐ 3 | Foreign Nation | ❐ 6 | ❐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❐ 110 Insurance | **PERSONAL INJURY** | ❐ 610 Agriculture | ❐ 422 Appeal 28 USC 158 | ❐ 400 State Reapportionment |
| ❐ 120 Marine | ❐ 310 Airplane | ❐ 620 Other Food & Drug | ❐ 423 Withdrawal 28 USC 157 | ❐ 410 Antitrust |
| ❐ 130 Miller Act | ❐ 315 Airplane Product Liability | ❐ 625 Drug Related Seizure of Property 21 USC 881 |  | ❐ 430 Banks and Banking |
| ❐ 140 Negotiable Instrument | ❐ 320 Assault, Libel & Slander | ❐ 630 Liquor Laws | **PROPERTY RIGHTS** | ❐ 450 Commerce |
| ❐ 150 Recovery of Overpayment & Enforcement of Judgment | ❐ 330 Federal Employers' Liability | ❐ 640 R.R. & Truck | ❐ 820 Copyrights | ❐ 460 Deportation |
| ❐ 151 Medicare Act | ❐ 340 Marine | ❐ 650 Airline Regs. | ❐ 830 Patent | ❐ 470 Racketeer Influenced and Corrupt Organizations |
| ❐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ❐ 345 Marine Product Liability | ❐ 660 Occupational Safety/Health | ❐ 840 Trademark | ❐ 480 Consumer Credit |
| ❐ 153 Recovery of Overpayment of Veteran's Benefits | ❐ 350 Motor Vehicle | ❐ 690 Other |  | ❐ 490 Cable/Sat TV |
| ❐ 160 Stockholders' Suits | ❐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ❐ 810 Selective Service |
| ❐ 190 Other Contract | ❐ 360 Other Personal Injury | ❐ 710 Fair Labor Standards Act | ❐ 861 HIA (1395ff) | ❐ 850 Securities/Commodities/ Exchange |
| ❐ 195 Contract Product Liability | **PERSONAL INJURY** | ❐ 720 Labor/Mgmt. Relations | ❐ 862 Black Lung (923) | ❐ 875 Customer Challenge 12 USC 3410 |
| ❐ 196 Franchise | ❐ 362 Personal Injury - Med. Malpractice | ❐ 730 Labor/Mgmt.Reporting & Disclosure Act | ❐ 863 DIWC/DIWW (405(g)) | ❐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ❐ 365 Personal Injury - Product Liability | ❐ 740 Railway Labor Act | ❐ 864 SSID Title XVI | ❐ 891 Agricultural Acts |
| ❐ 210 Land Condemnation | ❐ 368 Asbestos Personal Injury Product Liability | ❐ 790 Other Labor Litigation | ❐ 865 RSI (405(g)) | ❐ 892 Economic Stabilization Act |
| ❐ 220 Foreclosure | **PERSONAL PROPERTY** | ❐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ❐ 893 Environmental Matters |
| ❐ 230 Rent Lease & Ejectment | ❐ 370 Other Fraud |  | ❐ 870 Taxes (U.S. Plaintiff or Defendant) | ❐ 894 Energy Allocation Act |
| ❐ 240 Torts to Land | ❐ 371 Truth in Lending | **IMMIGRATION** | ❐ 871 IRS—Third Party 26 USC 7609 | ❐ 895 Freedom of Information Act |
| ❐ 245 Tort Product Liability | ❐ 380 Other Personal Property Damage | ❐ 462 Naturalization Application |  | ❐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ❐ 290 All Other Real Property | ❐ 385 Property Damage Product Liability | ❐ 463 Habeas Corpus - Alien Detainee |  | ❐ 950 Constitutionality of State Statutes |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❐ 465 Other Immigration Actions |  |  |
| ❐ 441 Voting | ❐ 510 Motions to Vacate Sentence |  |  |  |
| ❐ 442 Employment | **Habeas Corpus:** |  |  |  |
| ❐ 443 Housing/ Accommodations | ❐ 530 General |  |  |  |
| ❐ 444 Welfare | ❐ 535 Death Penalty |  |  |  |
| ❐ 445 Amer. w/Disabilities - Employment | ❐ 540 Mandamus & Other |  |  |  |
| ❐ 446 Amer. w/Disabilities - Other | ❐ 550 Civil Rights |  |  |  |
| ❐ 440 Other Civil Rights | ❐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ❐ 1 Original Proceeding
- ❐ 2 Removed from State Court
- ❐ 3 Remanded from Appellate Court
- ❐ 4 Reinstated or Reopened
- ❐ 5 Transferred from another district (specify)
- ❐ 6 Multidistrict Litigation
- ❐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ❐ Yes  ❐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____